## Conner v. Taylor.

(Decided March 28, 1930.)

SELDON Y. TRIMBLE and HUBERT MEREDITH for appellant.

OSCAR M. SMITH and G. S. MILAM for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In this action for slander, plaintiff, D. F. Taylor, charged that the defendant, Verser Conner, falsely, maliciously, and willfully spoke of and concerning him the following words: "When he, Forrest Taylor, was sick before he had a venereal disease, and that is what is his trouble now, and I can not keep him on my place as the other employees would not stay on the farm, and in the house with him."

In addition to pleading the truth of the statement, Conner relied on a plea of qualified privilege. The jury returned a verdict in favor of Taylor for $400, and Conner has prayed an appeal.

Appellant owns a farm near Russellville, which was being operated by appellee under an agreement by which

they were to share equally in the profits. In addition to a general farming business, they operated a dairy and sold milk and cream. In the fall of 1927, appellee's wife died and was buried on Thanksgiving Day, leaving him with two infant children. Thereupon Joseph Reynolds and his wife were employed to take care of the children and help in the operation of the farm. Shortly after the death of his wife, appellee became ill, and was confined in his bed off and on until March 28, 1928, when he was taken to the hospital at Russellville and operated on for appendicitis. About ten days after the operation, he went to the home of his mother in Logan county, where he remained until April 24, 1928, on which date he intended to return to the farm. On that day Mrs. Joe Reynolds informed appellant that she and her husband were going to leave the place, as she had learned that appellee was preparing to return. Appellant was unwilling to have his farm left without an overseer, and asked Mrs. Reynolds why she was going to leave. She said that she was unwilling to live in the same house with appellee, and told appellant to talk to her husband if he wanted to know the particulars. Thereupon appellant sought Mr. Reynolds, and received from him the information that Taylor was afflicted with a venereal disease, and that he was not willing for his wife to wait upon him or live in the house with him in his diseased condition. Appellant then called Mrs. Taylor, appellee's mother, over the phone, and instructed her to tell appellee not to return. Mrs. Taylor wanted to know the reason, but appellant declined to discuss it further. Thereupon one of appellee's brothers called appellant and wanted to know why appellee could not return and carry out his contract, but got no information or satisfaction from appellant. A messenger was then sent to Silas Mason, appellee's brother-in-law, and he came to the Taylor home. After a family conference, he, in company with W. B. Taylor, appellee's brother, came to Russellville, called appellant over the telephone and made an engagement to meet him. When appellant appeared, they inquired why appellant wanted to dispossess appellee. It was then that appellant made the statement above quoted.

The law applicable to the facts of this case may be summarized as follows: Words falsely spoken of another, and imputing an infectious disease likely to exclude him

from society, are actionable per se, which means that they carry with them a presumption both of malice and of damage. Walker v. Tucker, 220 Ky. 363, 295 S. W. 138, 53 A. L. R. 547; Sally v. Brown, 220 Ky. 576, 295 S. W. 890. If, however, it is pleaded and proved that the communication was qualifiedly privileged, this presumption no longer obtains, and a recovery may be had only upon proof of actual malice and damage. McClintock v. McClure, 171 Ky. 714, 188 S. W. 867, Ann. Cas. 1918E, 96; Baskett v. Crossfield, 190 Ky. 751, 228 S. W. 673; Faris v. Starke, 9 Dana, 128, 33 Am. Dec. 536. Here the communication was made under the following circumstances: Appellee and appellant were operating the farm and dairy on shares. Appellee being unable to do so, it was necessary to have some one look after the farm. Mr. Reynolds and his wife, who were relatives of appellee, were unwilling to stay, and gave as their reason that appellee had an infectious disease. Mr. Reynolds claimed to have actual knowledge of appellee's condition. Not only was it to appellant's interest to retain the services of Mr. and Mrs. Reynolds, but he knew that any rumor as to the cleanliness of any one in charge of operations would necessarily affect, if not destroy, the dairy business. He owed to the public, to whom he and appellee were selling milk and cream, not to subject them to any possible contagion. He owed to Mr. and Mrs. Reynolds, who wished to remain on the farm, the duty of relieving the situation of which they complained. In these circumstances he announced to appellee's mother that he did not want appellee to return to the farm. This fact was communicated to appellee and the members of his family. Though he and they say that his brother and brother-in-law were not his agents, and had no authority to represent him, his brother and brother-in-law admit that when informed that appellant did not desire appellee to return, they as a family wanted to know the reason and they discussed in appellee's presence the fact that they would leave him at home and go and find out from appellant why he would not let appellee come back, and this was their sole business in going to see appellant. On meeting appellant, they told him of the purpose of their visit, and then it was that he made the statement complained of. In the circumstances, appellant had an interest to serve and a duty to perform. He made the communication to representatives of appellee's family, who

had a corresponding interest in the subject and invited the discussion. There can be no doubt that he made the statement in good faith, and upon reasonable grounds to believe in its truth. It follows that the communication was qualifiedly privileged. Baker v. Clark, 186 Ky. 816, 218 S. W. 280; 36 C. J. 1247; Taylor v. Hawkins, 16 Q. B. 308, 71 E. C. L. 308, 117 Reprint 897; Weatherston v. Hawkins, 1 T. R. 110, 99 Reprint 1001. The record does not disclose that appellant repeated the statement to any one else. Any further notoriety, if any, growing out of the communication, was due entirely to the publication of the communication by appellee or his family. We do not find in the record any evidence justifying the inference of actual malice, or tending to show any actual damage to appellee as the result of the publication.

It follows that the trial court should have directed a verdict in favor of appellant.

Wherefore the appeal is granted, the judgment reversed, and cause remanded for a new trial consistent with this opinion.