NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0776n.06

No. 14-5157

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

BRIDGETTE SNYDER,

      Plaintiff-Appellant,

v.

KOHL'S DEPARTMENT STORES,
INC.,

      Defendant-Appellee.

**FILED**
Oct 10, 2014
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

BEFORE:    GUY and CLAY, Circuit Judges.[*]

    **CLAY, Circuit Judge.** Plaintiff Bridgette Snyder appeals from the district court's grant of summary judgment to Defendant Kohl's Department Stores, Inc. ("Kohl's") on her claims for false imprisonment and intentional infliction of emotional distress. For the reasons that follow, we **AFFIRM** the district court's grant of summary judgment on Plaintiff's claim for intentional infliction of emotional distress, but **REVERSE** and **REMAND** her false imprisonment claim for proceedings consistent with this opinion.

## BACKGROUND

    Plaintiff was detained by Defendant's personnel for suspected shoplifting at a Georgetown, Kentucky store on the evening of March 1, 2012, but, after a thirty or forty minute

---

    [*] After this appeal was submitted on the briefs, Judge Helene N. White recused herself because of a potential conflict of interest.

detention and a strip search conducted by a Kohl's employee at the direction of a police officer, she was ultimately found not to have taken anything. Following the incident, she brought suit against Kohl's, the police officer, and the City of Georgetown.[†] She separately settled her claims against the police officer and the City of Georgetown. Although the settlement eliminated the federal claims from the case, the district court proceeded to resolve Kohl's outstanding summary judgment motion on Plaintiff's state law claims of false imprisonment and intentional infliction of emotional distress. The district court's jurisdiction was proper under 28 U.S.C. § 1367.

The district court granted summary judgment to Defendant on the false imprisonment claim after concluding that the undisputed facts established that Defendant met the requirements of the "shopkeeper's privilege," an affirmative defense set out at KY. REV. STAT. ANN. § 433.236 (West 2014).

The district court held that the undisputed facts established that Defendant had probable cause for detaining Plaintiff, and that the detention was reasonable in length and manner. The district court listed these purportedly undisputed facts as supporting probable cause:

- Kohl's Loss Prevention Supervisor Michael Pittman ("Pittman") observed Snyder in a high-theft area of the store moving rapidly and picking up items without regard to size or price.
- Based on his initial observations and concerns, Pittman requested that Kohl's Loss Prevention Officer Michael Tam Lung ("Tam Lung") focus the store's closed circuit cameras on Snyder.
- During their observations, Pittman and Tam Lung observed other suspicious behavior by another patron consistent with being a look-out for Snyder or an accomplice.
- Pittman and Tam Lung observed Snyder enter a fitting room with a number of items of clothing. And while Pittman did not enter the fitting room with the plaintiff, he noted the specific fitting room that was used.

---

[†] Plaintiff originally filed suit in state court. All Defendants removed to the United States District Court for the Eastern District of Kentucky, invoking federal question removal jurisdiction under 28 U.S.C. §§ 1331 and 1441(b) (2012) based on the § 1983 claim Plaintiff brought against the government defendants.

- While Snyder was inside the fitting room, Pittman overheard popping sounds which were consistent with security tags being removed from merchandise.
- Pittman and Tam Lung observed Snyder exit the fitting room with no merchandise in her hands. After exiting, Snyder walked fast toward the store's exit.
- Pittman quickly checked the stall that Snyder had used but did not find any of the merchandise that had been taken into the fitting room.

(R. 51, Mem. Op. and Order, Page ID# 951-52.) Additionally, the court noted that after Plaintiff's detention and eventual departure, "Pittman discovered several items of merchandise several stalls from the one Snyder had used" and that "[a]ccording to the defendant, the security tag had been ripped off one pair of jean shorts, damaging the shorts." (*Id.* at Page ID# 952.) The district court acknowledged that "this additional information is not relevant to whether Kohl's had probable cause to detain Snyder under the statute," but nonetheless remarked that "it is consistent with the observations of Kohl's employees" that it had previously cited as evidence of probable cause. (*Id.*)

The district court did not specifically identify its reasons for concluding that Plaintiff's detention was reasonable in time and manner, but it did state that she "offered to remove items of clothing in an effort to convince Kohl's employees that she had not stolen merchandise" and that her participation in the strip search constituted "voluntary conduct." (*Id.* at Page ID# 952-53.)

Not all of these facts are undisputed. Plaintiff testified in her deposition that she left all of the clothes that she tried on in the fitting room where she tried them on. She testified that she did not know that any of the tags were removed. Plaintiff testified that she did not seek to remove her sweatshirt in order to demonstrate that she did not have anything on her, but rather because she was getting hot. Additionally, Plaintiff testified that she "complied" with the

officer's direction that she submit to a strip search because "he's a police officer." (R. 35-3, Snyder's Dep. Testimony. at Page ID# 788.)

Some additional facts not highlighted by the district court are also relevant to this appeal. First, Plaintiff described her selection of clothes to try on that day in a manner that diverges from the description by Defendant and the lower court. She testified in her deposition that she browsed the women's and junior's section and may have looked at shoes as well. She testified that she was looking for particular items: professional clothing to wear to nursing school and shorts because it was getting warm. She estimated that she looked around for no more than thirty or forty minutes. She selected approximately six items to try on. Plaintiff testified that she did not have a bag or a purse, and that all she had with her as she was leaving the store was her wallet, cell phone, and keys, which she was carrying in her hand. She pointed this out to the store employees while she was detained in the loss prevention room. Georgetown Police Officer Christopher Bayer *Mirandized* her shortly after he arrived at the store. Plaintiff testified that the police officer directed the search after he had been questioning her for a while and Plaintiff "said something along the lines of what now, because we had been sitting there for a while just with no – with nothing happening." (*Id.* at Page ID# 788.) After she was strip searched she returned to the loss prevention room and was kept there for another ten minutes. (*Id.* at Page ID# 789.) While she was there, the Kohl's employee who stopped her came in and said to her, "I'm sorry. I'm going to get fired." (*Id.*) She also testified that the police officer said, perhaps to make light of the situation, "[a]pparently, you just looked guilty." (*Id.* at Page ID# 790.) The police officer testified that he reviewed the surveillance video more fully after Plaintiff was allowed to leave and stated that he did not see anything on the video that would have established probable cause

for him to believe Plaintiff had shoplifted anything. (R. 33-5, Officer Bayer's Dep. Testimony, Page ID# 690.)

## DISCUSSION

### I.     Standard of Review

Whether a district court properly granted summary judgment is a question of law that is reviewed *de novo*. *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006). Judgment may only be affirmed if the moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A genuine factual dispute exists where evidence would allow "a reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, the evidence "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Likewise, "the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979).

"[T]he substantive law will identify which facts are material," *Anderson*, 477 U.S. at 248, as well the allocation of the burden to produce evidence, *Celotex v. Catrett*, 477 U.S. 317, 322-25 (1986). Where a defendant seeks summary judgment on an affirmative defense on which it will bear the ultimate burden of proof at trial, summary judgment is proper "'only if the record shows that [the defendant] established the defense so clearly that no rational jury could have found to the contrary.'" *Beck-Wilson*, 441 F.3d at 365 (quoting *Buntin v. Breathitt Cnty. Bd. of Educ.*, 134 F.3d 796, 800 (6th Cir. 1998)).

A court impermissibly invades the province of the jury it if it attempts to "resolve[] issues of credibility and other conflicting evidence." *Regal Cinemas, Inc. v. W&M Props.*, 234 F.3d 1269, at *3 (6th Cir. 2000) (table disposition). *See also Anderson*, 377 U.S. at 249 ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

Additionally, in reviewing summary judgment decisions this Court has observed that certain substantive elements, like reasonableness or probable cause, are so fact bound that they should normally be reserved for the jury "unless there is only one reasonable determination possible" based on the evidence produced by the parties. *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (the existence of probable cause typically presents a question for the jury); *accord McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984) ("in a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury"). *See also Hatch v. Durocher Dock & Dredge, Inc.*, 33 F.3d 545, 547 (6th Cir. 1994) ("the question of seaman status is a mixed question of fact and law and, as such, '[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was . . . [a seaman], it is a question for the jury.'") (editing in original) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991)); *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294 (6th Cir. 2008) (the reasonableness of efforts to maintain secrecy of a trade secret "ordinarily represents a question for the jury" and "only in an extreme case can what is a 'reasonable' precaution be determined as a matter of law").

## II.    Analysis

In light of the conflicting testimony about factual matters material to whether Defendant had reason to suspect Plaintiff of shoplifting and whether Plaintiff's detention was reasonable in

time and manner, we conclude that the decision to grant summary judgment to Defendant on the false imprisonment claim was improper. However, because Plaintiff failed to establish that she suffered "severe" emotional distress, we affirm dismissal of the claim for intentional infliction of emotional distress.

**1. The District Court Erred in Granting Summary Judgment on Plaintiff's Claim for False Imprisonment**

Kentucky law protects a retailer and its employees from liability for false imprisonment based on the detention of a suspected shoplifter if three requirements are met: (1) the employee has "probable cause" to believe the individual is shoplifting; (2) the person is detained "in a reasonable manner for a reasonable length of time"; and (3) the detention is effected for one of five legitimate purposes, such as making reasonable inquiry into whether the person has unpurchased merchandise, recovering those goods, or informing law enforcement of the detention of the person. KY. REV. STAT. ANN. § 433.236(1) (West 2014).

In order to affirm the district court's grant of summary judgment to Defendant based on this privilege, this Court must find that Defendant has put forward evidence establishing each of these three elements "so clearly that no rational jury could have found to the contrary." *Beck-Wilson*, 441 F.3d at 365. Although the first requirement of probable cause and the second requirement that the detention be reasonable in both time and manner are normally questions for the jury, the Defendant may succeed in establishing those elements if the evidence before the court allows "only one reasonable determination." *Gardenhire*, 205 F.3d at 315. Defendant did not meet that burden.

The district court failed to comply with summary judgment standards in granting judgment to Defendant on the basis of the "shopkeeper's privilege" affirmative defense.

### a. The District Court Failed to View the Evidence in the Light Most Favorable to the Plaintiff

The district court adopted Defendant's version of the facts in determining that there was probable cause. It accepted Defendant's characterization that Plaintiff was "moving rapidly and picking up items without regard to size or price," (R. 51, Mem. Op. and Order, Page ID# 951), and ignored Plaintiff's testimony that she was browsing at Kohl's for about thirty or forty minutes, picking out clothes for particular purposes. The district court credited testimony that Pittman heard popping noises consistent with the tags being removed from clothing while Plaintiff was in the dressing room, when Plaintiff testified that she did not know that any of the tags were removed. Additionally, Plaintiff's testimony that Pittman expressed concern about being fired permits the inference that Pittman may have had a motive to subsequently pop the tags himself and then lie about doing so. A jury would not have been required to believe Pittman's testimony about the popping noises, and it was error for the district court to rely on that testimony to buttress its probable cause finding. The district court also failed to mention other evidence favorable to Plaintiff, as discussed further below.

### b. The District Court Improperly Shifted the Burden to Plaintiff to Refute the Affirmative Defense

The district court misapprehended the application of summary judgment law to an affirmative defense. It did not require Defendant to establish each element of the shopkeeper's privilege "so clearly that no rational jury could have found to the contrary." *Beck-Wilson*, 441 F.3d at 365. Instead, it placed the burden on Defendant only to establish probable cause, writing that the dispute over the prima facie case would "not be dispositive" if Defendant established that it "had probable cause to believe that Snyder had taken merchandise from the Georgetown store." (R. 51, Mem. Op. and Order, Page ID# 950-51.) In fact, Defendant must also have

established—so clearly that no rational fact finder could disagree—that its detention of Plaintiff was reasonable in both time and manner, and that the detention was effected for one of the statutory purposes.

The district court pointed to no evidence that would establish the reasonableness of Defendant's detention of Plaintiff, concluding without explanation that "the alleged detention was reasonable (both in length and in the manner in which it was conducted)." (*See id.* at Page ID# 952.) Instead, it briefly rejected Plaintiff's allegations of unreasonableness based on an acceptance of Defendant's version of the facts, including Defendant's contention that Plaintiff "offered to remove items of clothing in an effort to convince Kohl's employees that she had not stolen merchandise." (*See id.*) In fact, Plaintiff testified that she only sought to remove her sweatshirt because she was hot and that she never suggested a strip search. The district court further characterized her participation in the strip search as "voluntary conduct," even though Plaintiff testified that she had only allowed herself to be strip searched in compliance with the direction of the police officer who *Mirandized* her. (*See id.* at Page ID# 952-53.) Nonetheless, the district court wrote that "Kohl's agreement and participation in this voluntary conduct by Snyder does not render its actions unreasonable." (*Id.*) In requiring Plaintiff to show the *unreasonableness* of Defendant's conduct, the court impermissibly shifted the burden to her to refute the affirmative defense. In doing so, it violated both summary judgment procedure requiring the moving party to establish the absence of dispute as to a genuine issue of material fact, and the underlying substantive law that places the burden of proving an affirmative defense on the defendant. *See* FED. R. CIV. P. 56; *Beck-Wilson*, 441 F.3d at 365. There is no evidence that the district court considered the sufficiency of Defendant's affirmative showing with regard to reasonableness.

Finally, there is no evidence that the district court considered whether Plaintiff's detention was effected for one of the statutory purposes. Even if the detention fell within one of those categories, however, the disputes of fact as to probable cause and reasonableness preclude summary judgment.

### c. Summary Judgment was Improper on the Record in this Case

When summary judgment standards are correctly applied to the evidence before the district court in this case, it is clear that the Defendant is not entitled to judgment as a matter of law.

Defendant has failed to establish the existence of probable cause "so clearly that no rational jury could have found to the contrary." *Beck-Wilson*, 441 F.3d at 365. In its single decision interpreting KY. REV. STAT. ANN. § 433.236 (West 2014), the Kentucky Supreme Court did not articulate a standard for probable cause, though it held that the evidence permitted a finding of probable cause in that case. *See Consol. Sales Co. v. Malone*, 530 S.W.2d 680, 682 (Ky. 1975) (jury could have found probable cause where the store employee observed the plaintiff repeatedly carry items from the baby department to where another plaintiff was shopping in the shoe department, and emerge without the items, and the items were not found in the shoe department). Under the federal Constitution, probable cause is found where, considering the totality of the circumstances, the facts available to the person detaining an individual "would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 133 S. Ct. 1050, 1056 (2013); *see also Maryland v. Pringle*, 540 U.S. 366, 370 ("the substance of all the definitions of probable cause is a reasonable ground for belief of guilt"). Due to the fact-intensive nature of the probable cause

inquiry, the issue typically "presents a jury question, unless there is only one reasonable determination." *Gardenhire*, 205 F.3d at 315.

Viewed in the light most favorable to Plaintiff, the evidence relevant to probable cause that would have been available to Defendant's employees when they stopped her includes that she was shopping in Kohl's for thirty or forty minutes; that she selected about six items to try on, including a blazer and jean shorts; and that when she left the fitting room the only items she was carrying were her phone, wallet and keys. It is undisputed that she was wearing a sweatshirt, but it is nonetheless difficult to imagine how Kohl's employees, if they were persons of reasonable caution, could have believed that she was carrying out of the store all six items (since Pittman claims *none* were in her fitting room) under her sweatshirt. Additionally, even if Defendant's (and the district court's) version of the facts *were* undisputed, their description does not rise to the level of indisputable probable cause that has previously supported judgment as a matter of law under KY. REV. STAT. ANN. § 433.236 (West 2014). *Compare Messer v. Robinson*, 250 S.W.3d 344, 346-47 (Ky. Ct. App. 2008) ("objective probable cause to stop Robinson" existed when "the security alarm sounded as she passed through the security device") (ordering directed verdict for defendants); *Taylor Drugstores, Inc. v. Story*; 760 S.W.2d 102, 103 (Ky. Ct. App. 1988) (plaintiff was observed placing two items in her purse) (ordering entry of judgment in favor of defendant); *Pennington v. Dollar Tree Stores, Inc.*, 28 F. App'x 482 (6th Cir. 2002) (where Plaintiff had stipulated that employees had probable cause in related criminal plea deal, that stipulation was conclusive as to probable cause in the civil case) (affirming summary judgment).

Defendant's case faces additional trouble on the reasonableness prong. Viewed in the light most favorable to Plaintiff, the evidence establishes that upon being taken to the back room

11

she informed the store employees that the only items she had were her phone, wallet, and keys; that during her detention no employee returned to the fitting room to verify whether there had been a mistake; that a Kohl's employee participated in a strip search of Plaintiff; and that she was detained for thirty or forty minutes. In *Birdsong v. Wal-Mart Stores, Inc.*, 74 S.W.3d 754 (Ky. Ct. App. 2001), the Kentucky Court of Appeals overturned a grant of summary judgment on the shopkeeper's privilege as inappropriate where the plaintiff "claim[ed] she was detained by store employees for approximately 45 minutes" and "that she was subjected to humiliation" by being made to sit on a bench near the front of the store with a shopping cart pushed in front of her to block her from leaving. *Id.* at 758. In the case at bar, the amount of time Plaintiff was detained is only somewhat less than the forty-five minutes at issue in *Birdsong*, but the strip search she was subjected to could reasonably be found more humiliating than Birdsong's experience of being made to wait at the front of the store. *See id.*

## 2. Summary Judgment on Plaintiff's Claim for Intentional Infliction of Emotional Distress was Properly Granted

Summary judgment on Snyder's intentional infliction of emotional distress claim was properly granted. Under Kentucky law, "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress[.]" *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984) (*quoting and adopting* RESTATEMENT (SECOND) OF TORTS § 46 (1965)). To sustain this claim Plaintiff must establish, as one of the necessary elements, that she suffered "severe" emotional distress. In contrast to the elements of probable cause or reasonableness in regard to the false imprisonment claim above, the essentially factual question of whether the Plaintiff suffered "severe" emotional distress is subject to gatekeeping by the court, which must determine "whether on the evidence severe emotional distress can be found" before the jury may determine "whether, on the evidence, it has

in fact existed." RESTATEMENT (SECOND) OF TORTS § 46, cmt. j (1965). Snyder claimed that she is embarrassed because of her detention and that she no longer feels comfortable shopping. Snyder's embarrassment and discomfort do not rise to the level of severe emotional distress required to submit her claim to the jury. *See Wells v. Huish Detergents, Inc.*, 19 F. App'x 168, 179 (6th Cir. 2001); *Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 572 (Ky. Ct. App. 2005).

## CONCLUSION

For the foregoing reasons, we **REVERSE** the entry of judgment for Defendant on the false imprisonment claim and **REMAND** the case for further proceedings consistent with this opinion. We **AFFIRM** the grant of summary judgment to Defendant on Plaintiff's claim for intentional infliction of emotional distress.